1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   REVELRY VINTNERS, LLC,

                                            NO. 4:21-CV-5110-TOR
8                          Plaintiff,

                                            ORDER DENYING DEFENDANTS'
9          v.                               MOTION TO STRIKE EXPERT
                                            WITNESS, GRANTING IN PART
10  MACKAY RESTAURANT                        DEFENDANTS' MOTION TO
    MANAGEMENT GROUP, INC.;                  STRIKE EXPERT WITNESS, AND
11  FIRE & VINE HOLDINGS, LLC; EL            DENYING AS MOOT PLAINTIFF'S
    GAUCHO BELLEVUE, LLC; EL                 MOTION TO STRIKE
12  GAUCHO PORTLAND, LLC; EL
    GAUCHO SEATTLE, LLC; EL
13  GAUCHO TACOMA, LLC; EL
    GAUCHO VANCOUVER, LLC;
14  WILSON MACKAY 1, LLC;
    WATERFRONT, LLC; DENIM
15  HOSPITALITY LLC; WALLA
    WALLA STEAK CO. LLC; WALLA
16  WALLA STEAK CO
    WOODINVILLE LLC; T-POST
17  TAVERN WW LLC; and
    YELLOWHAWK RESORT WW,
18  LLC,

19                         Defendants.

20

    ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
    WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
    EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
    TO STRIKE ~ 1

1    BEFORE THE COURT are Defendants' Motion to Exclude Expert Witness

2  Douglas McDaniel (ECF No. 158), Yellowhawk's Motion to Exclude Testimony

3  of Douglas McDaniel (ECF No. 168), Defendants' Motion to Exclude Expert

4  Witness Deborah Steinthal (ECF No. 163), and Plaintiff's Motion to Strike

5  Defendants' Reply (ECF No. 180).  These matters were submitted for

6  consideration without oral argument.  The Court has reviewed the record and files

7  herein and is fully informed.  For the reasons discussed below, Defendants' Motion

8  to Exclude Expert Witness Douglas McDaniel (ECF No. 158) is DENIED,

9  Yellowhawk's Motion to Exclude Testimony of Douglas McDaniel (ECF No. 168)

10  is DENIED as moot, Defendants' Motion to Exclude Expert Witness Deborah

11  Steinthal (ECF No. 163) is GRANTED in part, and Plaintiff's Motion to Strike

12  Defendants' Reply (ECF No. 180) is DENIED as moot.

13                          **BACKGROUND**

14    Defendants move for the exclusion of two of Plaintiff's Expert Witnesses:

15  Douglas McDaniel, who is offered for the purpose of quantifying Plaintiff's

16  damages, and Deborah Steinthal, who is offered as an industry branding and

17  marketing expert.  Defendant Mackay Restaurant Group joined in Defendant

18  Yellowhawk's Motion to Exclude Mr. McDaniel as an expert.  ECF No. 165.

19  Defendants jointly brought the Motion to Exclude Ms. Steinthal as an expert.

20  Plaintiff also moved to strike Defendants Reply to the exclusion of Mr. McDaniel

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 2

as untimely.  ECF No. 180.  A detailed factual background of this matter may be

found in the Court's Order denying Preliminary Injunction (ECF No. 141).

## DISCUSSION

Expert testimony is admissible if it meets the standards set forth in Federal

Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires that the expert testimony "rest[] on a reliable foundation

and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc*., 509

U.S. 579, 597 (1993).  Such testimony is relevant if it "logically advance[s] a

material aspect of the party's case," *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.

2007) and is reliable if the expert has a "basis in the knowledge and experience of

the relevant discipline", *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463

(9th Cir. 2014) (en banc) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

137, 149 (1999) *overruled on other grounds* in *United States v. Bacon*, 979 F.3d

766 (9th Cir. 2020) (en banc)).

When engaging in expert testimony analysis under Rule 702, a court

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 3

1    functions as "a gatekeeper, not a fact finder." *City of Pomona v. SQM N. Am.*

2    *Corp.,* 750 F.3d 1036, 1043 (9th Cir. 2014) (internal citation omitted).  The

3    "gatekeeper" function largely serves as a protection for juries from being swayed

4    by "dubious scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165

5    (9th Cir. 2018).  While "[a]n opinion is not objectionable just because it embraces

6    an ultimate issue," Federal Rule of Evidence 704(a), "an expert witness cannot

7    give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of

8    law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).  Further, a

9    court's role is to screen for "unreliable nonsense opinions," but will not exclude an

10    opinion simply because it is impeachable.  *Alaska Rent-A-Car, Inc. v. Avis Budget*

11    *Grp., Inc.,* 738 F.3d 960, 969 (9th Cir. 2013) (internal citation omitted).

12    In assessing reliability, "[t]he test 'is not the correctness of the expert's

13    conclusions but the soundness of his methodology,' and when an expert meets the

14    threshold established by Rule 702, the expert may testify and the fact finder

15    decides how much weight to give that testimony." *Pyramid Techs., Inc. v.*

16    *Hartford Cas. Ins. Co.,* 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano v.*

17    *Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010)).  Assisting in this "flexible" analysis,

18    the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993),

19    stated that reliability may be demonstrated by showing "whether a theory or

20    technique can be tested," "whether it has been subjected to peer review and

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 4

1   publication," "the known or potential error rate of the theory or technique," and

2   "whether the theory or technique enjoys general acceptance within the relevant

3   scientific community." *Id*. However, the reliability factors are meant to be helpful

4   rather than individually dispositive, and a trial court is vested with discretion in

5   their application based on the circumstances of a particular case. *Alaska Rent-A-*

6   *Car*, 738 F.3d at 969.

7       In sum, "[v]igorous cross-examination, presentation of contrary evidence,

8   and careful instruction on the burden of proof are the traditional and appropriate

9   means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

10  ## I.    Expert Testimony of Douglas McDaniel

11      Plaintiff retained Mr. McDaniel as an expert witness to demonstrate

12  damages in the form of lost sales, profits, and the potential for sales and profits, as

13  a result of Defendants' alleged actions. ECF No. 169 at 3. Mr. McDaniel has 32

14  years of forensic accounting experience, providing expert testimony in over 130

15  disputes. ECF No. 161-1 at 24–33. In his report produced for Plaintiff, Mr.

16  McDaniel analyzed three areas of potential damages: "Revelers Branded Product

17  Sales," "Revelers Club Wine Sales," and "Revelers Club Member Sales," to

18  determine damages to Plaintiff by Defendants alleged infringement through the

19  alleged use of the trademarked terms. ECF No. 161-1 at 2–3. His report is limited

20  strictly to damages, and "assumes that infringement has been established and that

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 5

the infringing terms are related to that infringement." *Id*. at 3.

Under the first category "Revelers Branded Product Sales," Mr. McDaniel determined that Defendants sold $XX[1] of branded products and earned a total profit of $XX. *Id*. Under the second category "Revelers Club Wine Sales," the report "includes Revelry's lost profits from potential wine sales to locations affiliated with Mackay Group's Revelers Club," and found that Plaintiff lost $XX in sales and $XX in profit due to infringement. *Id*. at 4. Additionally, Defendant Mackay Restaurant Group cancelled a wine pallet in 2015, resulting in Plaintiff's loss of $XX in sales and $XX in profits. *Id*. The second category also analyzed the sale of branded wine purchased by Defendant McKay Restaurant Group from a third-party producer rather than from Plaintiff during 2017–2021, resulting in a loss of $XX in sales and $XX in profit. *Id*. And determined that Plaintiff was injured by the $XX in sales and $XX in profit obtained by Defendant Yellowhawk. *Id.* at 5. Finally, the third category "Revelers Club Member Sales," relied on the report from Plaintiff's other expert witness Deborah Steinthal and is dependent upon the presumption that "all Revelers Club member sales were the result of

---

[1] The Court is respecting the Protection Order entered in this case, at this time. At trial, these numbers will be discussed publicly.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 6

confusion regarding the initial source of the goods or services." *Id*.  Mr. McDaniel

determined, based on industry average profit margins for Restaurants, Breweries,

Resorts, and Wineries, that Defendants use of Revelers Club to sell to members

resulted in $XX in sales and $XX in profit since 2011.  *Id*.

Defendants do not seek to exclude Mr. McDaniel's expert testimony because

he is unqualified to give it.  Rather, they argue his methods are allegedly incorrect

and draw an improper conclusion as to the amount of damage Plaintiff sustained.

Defendants contend that Mr. McDaniel conflates "lost profits" with "Defendant's

profits," based on the remedies provided by the Lanham Act, and argues that what

Mr. McDaniel actually discussed was "disgorgement" rather than changes to

Plaintiff's income or profits.  ECF No. 158 at 8–9.  Further, according to

Defendants, his methods are unreliable, and do not accurately reflect lost sales due

to infringement as it impermissibly assumes that every dollar Defendants earned is

ill-gotten.  *Id*. at 9–11.  Defendants produced an expert witness to rebut the

findings of Mr. McDaniel.  ECF No. 162.

Under the Lanham Act, a plaintiff may "recover (1) defendant's profits, (2)

any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C.

§ 1117(a).  There are typically two separate ways to recover damages under the

Lanham Act, (1) as a measure of the plaintiff's own damages; or (2) on a theory of

disgorgement of the defendant's unjustly obtained profits.  *See Lindy Pen Co. v.*

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 7

1   *Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *superseded by statute on*

2   *other grounds*, S*unEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180

3   (9th Cir. 2016).  Relevant to this dispute, "[i]n assessing profits the plaintiff shall

4   be required to prove defendant's sales only; defendant must prove all elements of

5   cost or deduction claimed." § 1117(a).  It appears here that Mr. McDaniel's

6   testimony addresses Plaintiff's lost profit damages and disgorgement damages.

7   ECF No. 161-1 at 3. "Damages are typically measured by any direct injury which a

8   plaintiff can prove, as well as any lost profits which the plaintiff would have

9   earned but for the infringement," and "are guided by tort law principles." *Lindy*

10   *Pen Co.*, 982 F.2d at 1407.

11       *A. Lost Profits Theory of Damages*

12       The second category of Mr. McDaniel's report, "Revelers Club Wine Sales,"

13   best demonstrates the theory of lost profits.  The narrative states "[t]he second

14   category includes Revelry's lost profits from potential wine sales to locations

15   affiliated with Mackay Group's Revelers Club . . . and those sold under the

16   Reveler's Club affiliation by Yellowhawk." ECF No. 161-1 at 4.  This category

17   included a forecast of Plaintiff's profit margins, detailing a calculation that

18   Plaintiff lost $XX in profits due to alleged infringement, as well as the loss in the

19   sale of the pallet as an example of a direct injury to Plaintiff's business. *Id.* ("To

20   determine the lost profit from the canceled order of wine we multiplied the number

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 8

of bottles for a pallet (672 bottles) by an estimated bottle price of $XX and applied Revelry Vintners' 2015 variable profit margin.") ("To determine the lost profit to Revelry Vintners we have multiplied the branded wine sales by Revelry Vintners variable profit margins for 2017 through 2021.").

"To establish damages under the lost profits method, a plaintiff must make a 'prima facie showing of reasonably forecast profits.'" *Lindy Pen Co*. 982 F.2d at 1407 (9th Cir. 1993). Lost profits must be supported by "reasonable certainty," which does not require "absolute exactness," but cannot be "remote and speculative." *Id*. at 1407–08. Further, when a plaintiff utilizes defendant's profits as the measure for damages "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty." *Id*. at 1408. The defendant then bears the burden of showing sales that are not attributable to infringement, as well as relevant overhead. *Id*.

Defendants argue that Mr. McDaniel's testimony conflates the theory of disgorgement with the theory of lost profits, and in reality, does not have a discussion of pure lost profits. The Court largely agrees. Here, Mr. McDaniel's only tangible piece of "lost profits" evidence is a cancelled pallet that was intended to be purchased by defendants. ECF No. 161-1 at 4. Rather than purchasing Plaintiff's wine, Defendants instead opted to sell their own wine, allegedly branded with an infringing mark, to a third-party wine producer, thereby demonstrating a

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 9

tangible lost sale related to the alleged infringement. *Id*.

The Court further agrees that the categories as they appear in the report are tangled, as at first glance it appears that the report is attempting to hold out sales and profits Plaintiff did not obtain to be a direct harm, but lack additional context. The Ninth Circuit has held that when two businesses are in direct competition, lost profits can be shown by demonstrating that customers have been diverted away from plaintiff's business and redirected toward defendant's business. *Maier Brewing Co. v. Fleischmann Distilling Corp*., 390 F.2d 117, 121 (9th Cir. 1968). Stated another way, lost profits may be based on "the idea that the defendant diverted sales that would have gone to the plaintiff but for the infringement." *Spin Master, Ltd. v. Zobmondo Ent*., LLC, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012). But the report here does not base much of its findings on the premise that sales Plaintiff would have made were instead made by Defendant, save the sale of the 2015 pallet.  Nor does it state or assume that actual customers were diverted away from Plaintiff and resulted in Defendant's sales.  15 U.S.C. § 1117(a).  This is evidenced by the comparison of Defendant sales and profit margins to Plaintiffs, without any additional discussion of the minutiae of Defendant's sales.  But while "a plaintiff is not entitled to profits demonstrably not attributable to the unlawful use of his mark . . . the burden of proving any deduction for sales not based on the infringing mark falls upon the infringer." *California Expanded Metal Prod. Co. v.*

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 10

*Klein*, No. 18-CV-00659-JLR, 2023 WL 2824356, at *8 (W.D. Wash. Feb. 15, 2023). Mr. McDaniel is a damages expert, stating that his findings are "premised on a finding of infringement." ECF No. 161-1 at 3. The relevance of his report as it relates to lost profits may not become clear until Plaintiffs have made their full prima facia case. The Court reserves its ruling to the full scope of Mr. McDaniel's lost profit analysis, but for now agrees that, outside of the sale of the pallet in 2015, the bulk of the testimony is better discussed under a theory of disgorgement because it lacks the link of causation.

### B. Disgorgement Theory of Damages

Defendants next attack the report as fundamentally flawed in its assessment of Plaintiff's damage based on Defendants' ill-gotten gains. Mainly, Defendants assert that Mr. McDaniel's report improperly hypothesizes that every dollar they earned could have been earned by Plaintiff, therefore making his analysis and findings unreliable. ECF No. 158 at 14. According to Defendants, Mr. McDaniel's methodology is incorrect, because it takes the whole of Defendants' sales as diverted from Plaintiff, without an account for how many of those sales were related to infringement or customer confusion. *Id*. However, this is not an entirely accurate representation of the type of analysis the report conducts, nor the requirement of the Lanham Act. In category one "Revelers Branded Products Sales," the report states that to determine the profits derived from branded

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 11

products, Mr. McDaniel multiplied the total Revelers Product sales by the

Plaintiff's annual variable profit margin for 2017 through 2023, thereby accounting

for an estimate of diverted sales.  ECF No. 161-1 at 3.  He applied a similar metric

for category two "Revelers Club Wine Sales," calculating "Defendants' sales of

wine under the Revelers branding," and estimated Plaintiff's loss based on a series

of factors.  *Id.* at 4.  And similarly, the report found Plaintiff's loss to Defendant

Yellowhawk specifically by multiplying the Yellowhawk wine sales by Revelry

Vintners variable profit margins for 2021 through 2022.  *Id.* at 5.  Finally, for

category three, "Revelers Club Member Sales," the report analyzed "total sales and

associated profits related to goods and services sold to Revelers Club members at

locations affiliated with and advertised under Mackay Group's Revelers Club."  *Id.*

In opposing this methodology for disgorgement, Defendants analogize the

matter at hand with *Florida Virtual Sch. v. K12, Inc.,* No. 6:20-CV-2354-GAP-

EJK, 2023 WL 6294214, at *2 (M.D. Fla. Aug. 25, 2023), in which a court found

that assuming all students from one school would have enrolled at another but for

the actions of the defendant to be an inappropriate assumption.  However, that

court cabined its analysis specifically to the "lost profits" remedy and reserved the

remaining disgorgement analysis for a bench trial.  *Id.* at *3.  While the Court

agrees that the overall structure of the report could be more detailed in analysis and

provide better delineation between types of damages Plaintiff suffered, ultimately

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 12

the question of whether Mr. McDaniel's report is correct is not for the Court to decide at this stage.  *See Primiano*, 598 F.3d at 564.  Instead, the Court's examination of the methodology of the disgorgement calculation of damages is limited only to "whether a theory or technique can be tested," "whether it has been subjected to peer review and publication," "the known or potential error rate of the theory or technique," and "whether the theory or technique enjoys general acceptance within the relevant scientific community."  *Daubert*, 509 U.S. at 597.  Here, the Court finds that Mr. McDaniel's method is testable, and therefore can be challenged on cross-examination and rebutted by Defendant's own witness on damages.

Mr. McDaniel's report, on its own, could be helpful in assisting a trier of fact to quantify the direct and indirect loss experience by Plaintiff if infringement is proven.  As discussed above, the full scope of the usefulness of the report is unknown without a discussion of causation.  Therefore, the Defendants' Motion to Exclude Mr. McDaniel as an expert witness is denied.  Defendants may challenge the scope of his testimony at a later point in the proceedings if and when causation has been argued.

Given the Court's conclusion, Plaintiff's Motion to Strike Defendant's Reply as untimely (ECF No. 180) is denied as moot.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 13

## II.    Expert Testimony of Debora Steinthal

Plaintiff retained Ms. Steinthal as an expert on the wine industry, specifically branding and marketing.  ECF No. 164-1 at 3.  Ms. Steinthal has a 40-year career in marketing and branding, spending over 20 of those years working to provide strategic advice to more than 200 wine companies, though has never appeared as an expert witness.  *Id.*  Ms. Steinthal holds a bachelor's degree in science and economics from Lehigh University, and noted she has no formal education in trademarks.  *Id*. at 21, 43–44.  Instead, she has a background in wine-related business models and their functionality in the market, utilizing both qualitative and quantitative research, as well as consumer surveys, to inform her work.  *Id*. at 43.  In drafting her report, Ms. Steinthal reviewed discovery materials, as well as her career-related experience, to reach her findings.  *Id.*  The report ultimately found that Defendants' use of the REVELERS mark is likely to cause consumer confusion, and "exploits Revelry's sales efforts for its wines."  *Id.*

Defendants attack both Ms. Steinthal's qualifications to present expert testimony, as well as the reliability of the report she produced.  ECF No. 163 at 4, 9.  They also assert that Ms. Steinthal's report impermissibly offers a legal conclusion surrounding the "likelihood of confusion."  *Id*. at 6.

Rule 702 requires that an expert witness be vested with "scientific, technical, or other specialized knowledge" that "will assist the trier of fact" in their

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 14

understanding of the evidence.  If satisfied, "a witness qualified as an expert . . . may testify thereto in the form of an opinion."  Fed. R. Evid 702.  When evaluating an expert witness, a district court must ensure that testimony, whether based on personal experience or professional studies, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.*, 526 U.S. at 142.  The Ninth Circuit has held that Rule 702 is "broadly phrased and intended to embrace more than a narrow definition of qualified expert."  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (internal citations omitted).  When assessing non-scientific expert testimony, a trial court is vested with a broad gatekeeping function not limited to the *Daubert* factors.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

The admissibility of expert testimony, whether scientific or not, must assist the trier of fact to determine a fact in issue by providing information "beyond the common knowledge."  *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002).  Defendants argue that Ms. Steinthal's expertise as offered in the report is not relevant because it does not provide analysis beyond what a jury could observe on its own.  ECF No. 163 at 8.  The Court largely agrees, finding very little in Ms. Steinthal's report requires the assistance of an expert witness.

Some of Ms. Steinthal's report is dedicated to discussing topics that could be better addressed by parties to the case and do not require her analysis, such as her

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE ~ 15

1  discussion of both Plaintiff and Defendants' specific background, marketing plan,

2  and goods and services.  ECF No. 164-1 at 6–11.  Further her discussion on the

3  likeness between Defendants alleged infringing use and Plaintiff's protected use

4  does not rely on her marketing or branding expertise, and instead is based on her

5  observation of the similarities she finds between the two.  *Id*. at 12–13.  Her

6  discussion of consumer confusion in this context, while stated as couched in her

7  experience as a branding and marketing expert, is not supported by more than her

8  observation of competing logos.  *Id*. at 14.  Similarly, her analysis regarding

9  Plaintiff and Defendants targeting similar customers is not based on any sort of

10  expertise, and as such would not be helpful to a fact finder.  *Id*. at 17.

11      However, the Court does find that the section titled, "Revelry and Revelers

12  Club Have Overlapping Markets and Channels," is squarely within Ms. Steinthal's

13  purview as a marketing and branding expert, and likewise would assist a jury as

14  providing background into wine marketing channels in the Northwest.  *Id*. at 15–

15  17.  The context she provides for the wine-sales landscape for labels produced in

16  Walla Walla, Washington, and sold throughout the Pacific Northwest could be

17  beneficial for jurors to understand the market.  The Court likewise finds

18  conclusions she reaches in this section do not stretch beyond the type of expertise

19  she was retained to provide and is beyond the scope of common knowledge.

20      Therefore, Ms. Steinthal is limited to testimony on topics based on the

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 16

section "Revelry and Revelers Club Have Overlapping Markets and Channels."
The remaining sections of her report are stricken and will not be considered in
future reference to her expert testimony.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Exclude Expert Witness Douglas McDaniel (ECF
   No. 158) is **DENIED with leave to renew.**

2. Defendant Yellowhawk's Sealed Motion to Exclude Testimony of
   Douglas McDanial (ECF No. 168) is **DENIED as moot.**

3. Defendants' Motion to Exclude Expert Witness Deborah Steinthal (ECF
   No. 163) is **GRANTED in part.**

4. Plaintiff's Motion to Strike Defendants' Reply (ECF No. 180) is
   **DENIED as moot.**

The District Court Executive is directed to enter this Order and furnish
copies to counsel.

DATED June 3, 2024.

THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT
WITNESS, GRANTING IN PART DEFENDANTS' MOTION TO STRIKE
EXPERT WITNESS, AND DENYING AS MOOT PLAINTIFF'S MOTION
TO STRIKE ~ 17