UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REVELRY VINTNERS, LLC, | NO. 4:21-CV-5110-TOR |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| MACKAY RESTAURANT MANAGEMENT GROUP, INC.; FIRE & VINE HOLDINGS, LLC; EL GAUCHO BELLEVUE, LLC; EL GAUCHO PORTLAND, LLC; EL GAUCHO SEATTLE, LLC; EL GAUCHO TACOMA, LLC; EL GAUCHO VANCOUVER, LLC; WILSON MACKAY 1, LLC; WATERFRONT, LLC; DENIM HOSPITALITY LLC; WALLA WALLA STEAK CO. LLC; WALLA WALLA STEAK CO WOODINVILLE LLC; T-POST TAVERN WW LLC; and YELLOWHAWK RESORT WW, LLC, | |
| Defendants. | |

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 1

1    BEFORE THE COURT are Defendant Yellowhawk Resort WW, LLC's

2 Motion for Summary Judgment (ECF No. 171) and Defendant Mackay Restaurant

3 Management Group, Inc.'s Motion for Summary Judgment (ECF No. 173).  These

4 matters were submitted for consideration without oral argument.  The Court has

5 reviewed the record and files herein and is fully informed.  For the reasons

6 discussed below, Defendant Yellowhawk Resort WW, LLC's Motion for Summary

7 Judgment (ECF No. 171) and Defendant Mackay Restaurant Management Group,

8 Inc.'s Motion for Summary Judgment (ECF No. 173) are DENIED.

9                                    **BACKGROUND**

10    This matter arises out of a claim for trademark infringement.  Plaintiff is a

11 winery based in Walla Walla, Washington, founded in 2005.  ECF No. 190 at 78, ¶

12 160.  It holds a trademark for "REVELRY," which it first started using in 2007 and

13 registered in 2009, and "THE REVELER" which it first started using in 2009,

14 applied for mark in 2017, and registered in 2020.  *Id*. at 2, ¶¶ 3, 4.  Defendant

15 Mackay Restaurant Management Group, Inc. ("Mackay"), is a hospitality

16 management group, and holds itself as the largest wine purchaser in Washington

17 State.  ECF No. 120 at 5.  Defendant Mackay began a business relationship with

18 Plaintiff via a third-party distributor in 2011 when it started selling Revelry wine in

19 its associated restaurants.  ECF No. 190 at 56, ¶ 96.

20    Sometime in 2012, Defendant Mackay began operating a dining and loyalty

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 2

program called the "Revelers' Club," whereby customers enrolled would receive points for dollars spent that could later be redeemed for rewards at locations under the Mackay umbrella. *Id*. at 3, 7 ¶¶ 6, 10, 11. The 2012 loyalty club allegedly grew out of a postcard loyalty program started in 1997, which at one point operated under the name "REVEL." *Id*. at 4, ¶ 7. Restaurants that participated in the "Revelers Club" sold Plaintiff's wine, and Defendant Mackay alleges that Plaintiff actively sought to be included in various events hosted by Defendant's restaurants, further growing the relationship in the years between 2011 and 2018. *Id*. at 11–13, ¶¶ 19–29. Presently, the Revelers Club includes thirteen establishments throughout the Pacific Northwest, and Defendant Mackay alleges that it is made up of 160,323 members. *Id*. at 7–8, 10 ¶¶ 13, 18.

Late in 2018, Plaintiff's owner Jared Burns was dining at one of Defendant's newly opened Walla Walla establishments and learned about the "Revelers Club" from a server there. *Id*. at 14, ¶ 30. Plaintiff asserts that this 2018 interaction was the first it had heard of the "Revelers Club," and at the time understood it to be a food-related loyalty program for that specific establishment. *Id*. at 79, ¶ 166.

In the late spring and summer of 2019, Mr. Burns received emails relating to Defendant's use of derivatives of "revel," including branding on wine. *Id*. at 14, ¶ 32. In response to one such email, Mr. Burns wrote that he was aware of Defendant Mackay's use and disapproved but "it is what it is." *Id*. at 15, ¶ 33.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 3

1    However, in December 2019, Mr. Burns wrote to Defendant Mackay

2    regarding his discovery that the entity was selling "Revelers Red" wine and a

3    "Reveler"-branded whiskey.  *Id*. at 79, ¶ 167.  The email sent from Mr. Burns on

4    December 10, 2019, contained in part:

> The branding of the club quite frankly has always felt a little close to
> home as we have held a trademark on the word "Revelry" dating back
> very close to our inception in 2005. As it is a loyalty club I would
> assume it to be unrelated to our marks which cover wine, beer, and
> spirits. Once the word usage hits a bottle of any of the above it does
> infringe on our mark – and we must kindly ask that any such usage
> cease immediately.

9    ECF No. 100-6 at 4.

10    Plaintiff maintains that after this exchange, Mr. Burns engaged in additional

11    phone calls and emails with Chad Mackay, owner of Mackay Restaurant Group,

12    and other members of the Defendant Mackay, in which Mr. Burns reiterated he

13    was not under the impression that Defendant Mackay's use was related to its mark

14    "which cover wine, beer, and spirits."  ECF No. 100-6 at 4.  After the extensive

15    communication between the parties, Mr. Burns was satisfied that Defendant

16    Mackay would immediately stop any perceived infringing use.  ECF No. 190 at 80,

17    ¶ 171.  However, according to Plaintiff, Defendant Mackay continued to sell the

18    "reveler" branded wine inventory and produced the "reveler" branded spirit until

19    December 2022.  *Id*.  Defendant asserts that after the series of conversations about

20    the use of "reveler" derivatives, Plaintiff sought to grow the business relationship

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 4

between the two entities.  *Id*. at 17–20, ¶¶ 37–42.

In December 2020, Defendant Mackay obtained a winery, later renamed Yellowhawk Resort, close in proximity to Plaintiff.  ECF No. 190 at 80, ¶ 172. Upon learning of the acquisition of winery in January 2021, Mr. Burns sent an email to Mr. Mackay requesting that, "[the company] not use the Revelers Club in conjunction with the winery property, or that you perhaps consider a rebranding of that loyalty club."  ECF No. 100-7 at 3.  After further discussion, Mr. Mackay refused to cease use.  ECF No. 190 at 80, ¶ 173.  Plaintiff contends that Defendant Yellowhawk Resort WW, LLC ("Yellowhawk") ramped up usage of "Reveler" through a wine club with a "REVELER" tier and a "REVELER10" promotional code and offers to join Mackay Restaurant Group "Reveler's Club," much like other restaurants in the group use "REVELER(S)" in marketing for wine-related sales and events.  *Id*. at 81, ¶¶ 175, 178, 179.  Further, according to Plaintiff, Defendant Yellowhawk uses the REVELER(S)-brand in marketing materials by providing promotional materials displaying "REVELER(S)," including on wine bags provided to customers, and on protective padding used to ship wine and in bags for customers who buy wine at the physical Yellowhawk location.  *Id*. at 81– 82, ¶¶ 181, 182.  The two wineries also share a third-party wine distributor, meaning they share the same pool of retail customers.  *Id*. at 82, ¶ 184; ECF No. 188 at 7.  Plaintiff alleges that the similarities in the fares offered and the half mile

distance between the two wineries has caused customer confusion resulting in

damage to the trademarked REVELERY brand, which Defendants refute.  ECF

No. 190 at 82–83, ¶¶ 185, 191, 192; ECF No. 197 at 29, ¶ 185.

Plaintiff commenced this lawsuit on July 29, 2021, against Defendant

Mackay (ECF No. 1) and on March 2, 2022, against Defendant Yellowhawk, as

well as other entities affiliated with the Mackay Restaurant Management Group

(ECF No. 31).  Defendants Mackay and Yellowhawk moved for summary

judgment, which Plaintiff has opposed.  ECF Nos. 171, 173, 184, 188.  The

remaining twelve Defendants did not join in either motion for summary judgment.

## DISCUSSION

### I.    Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

on a motion for summary judgment, the court must only consider admissible

evidence.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

The party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact.[1]  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id*.  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

Local Rule of Civil Procedure 56(c)(1)(A) requires that the party moving for summary judgment file a separate "Statement of Material Facts Not in Dispute." The Court may take a fact as undisputed or admitted if a party fails to follow the requirements of Local Rule 56(c).  L. Civ. R. 56(e).  Defendant Mackay Restaurant Management Group Inc. included a "Statement of Material Facts Not in Dispute," as attached to its Motion for Summary Judgment, but Defendant Yellowhawk filed

its "Statement of Material Facts Not in Dispute," as attached to its Reply to

Plaintiff's Response, thereby depriving Plaintiff the ability to respond pursuant to

Local Rule 56(c)(1)(B).  ECF Nos. 174, 193.  This late filing by Defendant

Yellowhawk does not doom its motion for summary judgment, but instead the

Court assumes the truth of Plaintiff's evidence as it relates to Defendant

Yellowhawk.  This is consistent with the Court's role in weighing evidence under

the summary judgment standard.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 600–01 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) ("[A]t summary

judgment, the judge must view the evidence in the light most favorable to the

nonmoving party: if direct evidence produced by the moving party conflicts with

direct evidence produced by the nonmoving party, the judge must assume the truth

of the evidence set forth by the nonmoving party with respect to that fact.")

## II.   Lanham Act

Plaintiff has brought suit against Defendants under the Lanham Act for

trademark infringement.  ECF No. 31 at 9– 10.  Civil liability attaches under the

Lanham Act when an infringer uses a registered trademark in a way that is likely to

cause confusion, and as a result, the registrant is entitled to damages and

injunction.[2]  The underlying purposes of trademark law is, "[1] ensuring that owners of trademarks can benefit from the goodwill associated with their marks and [2] that consumers can distinguish among competing producers." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (internal citations omitted).  As a general matter, summary judgment is disfavored with regard to trademark infringement because the inquiry is often fact dependent.  *Id.* at 1031 (quoting *Entrepreneur Media, Inc. v. Smith*,

---

[2]      [A]ny person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . . or reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.  15 U.S.C. § 1114(1).

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . .  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  15 U.S.C. § 1125(a).

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 9

1    279 F.3d 1135, 1140 (9th Cir. 2002).

2    **III.    *Sleekcraft* Factors**

3        Defendant Yellowhawk seeks to readdress the *Sleekcraft* factors in support

4    of the contention that a lack of confusion between Plaintiff and Defendant

5    Yellowhawk warrants dismissal.  ECF No. 171 at 13.  In denial of Plaintiff's

6    Motion for Preliminary Injunction, the Court previously found that the "likelihood

7    of success on the merits weighs weakly in [Plaintiff's] favor," against all

8    Defendant's use while giving Plaintiff no deference as the moving party.  ECF No.

9    141 at 17.  Here, the Court must construe each *Sleekcraft* factor in the light most

10   favorable to Plaintiff as the non-moving party against Defendant Yellowhawk.

11       As previously stated, the Ninth Circuit has applied an eight factor test to

12   determine whether a defendant's use of a mark creates a likelihood of confusion:

13   (1) the strength of the mark; (2) proximity of the goods; (3) the similarity of the

14   marks; (4) evidence of actual confusion; (5) defendant's intent; (6) marketing

15   channels; (7) degree of customer care; and (8) likelihood of expansion.  *AMF Inc.*

16   *v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other*

17   *grounds*, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 810 n.19

18   (9th Cir. 2003); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290

19   (9th Cir. 1992).  These are nonexclusive factors, and the weight of each will

20   largely depend on the facts as presented in a given case.  *Brookfield Commc'ns,*

*Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The fact-intensive inquiry is usually not favorably resolved on summary judgment. *See Entrepreneur Media*, 279 F.3d at 1151.

### A. Strength of the Mark

Trademarks are generally categorized as generic (the least distinctive), descriptive, suggestive, and arbitrary or fanciful (the most distinctive). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The more distinctive a mark, the greater its conceptual strength; in other words, a mark's conceptual strength is proportional to the mark's distinctiveness." *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080 (9th Cir. 2005). The relative strength of a mark exists on a spectrum of protection, with "arbitrary" or "fanciful" marks receiving the most protection, "generic" receiving little to none, and "suggestive" or "descriptive" landing somewhere in the middle. *E. & J. Gallo*, 967 F.2d at 1291. Plaintiff argues that its mark is entitled to an "arbitrary" classification, given its investment in the brand and its award-winning status. ECF No. 184 at 9. Additionally, Plaintiffs trademarks are registered, which constitutes prima facia evidence of something more than a generic mark. 15 U.S.C. § 1057(b). While the Court previously found Plaintiff's mark to be "weak," it did so against the backdrop of a light most favorable to Defendants. ECF No. 184 at 9.

The Ninth Circuit has developed two factors to determine how a mark's strength is characterized, the "imagination test" and the "need test."  *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1221 n.4 (9th Cir. 2003) (quoting *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other grounds* recognized by *Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990)).  The "imagination test" seeks to answer, "how much imagination a consumer must use to associate a given mark with the goods or services it identifies."  *Miss World (UK) Ltd.*, 856 F.2d at 1449.  The need test enquires as to whether a mark is needed to identify the goods or services.  *Id*.  While a mark which requires "more imagination" to identify the product it represents is inherently stronger, the strength of the mark is placed up against the market or field in which the trademarked item exists.  *Id*. The Court's prior finding of a "weak" mark was the result of a dispute surrounding Plaintiff's acquisition of the "REVELER" trademark from the Trademark Office, coupled with a record that seemed to reflect a crowded field of entities using "revel" derivatives within the hospitality industry.  ECF No. 141 at 8; *see also M2 Software, Inc.,* 421 F.3d at 1088.  However, given the posture of summary judgment, the Court accepts that Plaintiff's investment in the brand resulting in the award-winning wine amounts to "commercial strength," and thus the mark is entitled to some amount of protection.  *Sutter Home Winery, Inc. v. Madrona*

*Vineyards*, L.P., No. C 05-0587 MHP, 2005 WL 701599, at *9 (N.D. Cal. Mar. 23, 2005).

B.  *Proximity of the Good; Similarity Between the Marks; and Shared Marketing Channels*

The Court finds a number of the *Sleekcraft* factors are interrelated and therefore analyzes them together.  A plausible question of fact remains as to whether Defendant Yellowhawk's use of the "Revelers" within marketing channels in the same industry and close proximity to Plaintiff would result in customer confusion.  Defendant argues that their use of the mark is limited to its participation in the "Revelers Club," as a member of the restaurant group, but has its own wine club called the "Yellowhawk Wine Club."  ECF No. 171 at 14.  It argues that the advertising it does in relation to the "Revelers Club," is qualified by a "housemark" denoting that the source as something other than Plaintiff's Revelry Vintners, LLC.  *Id.* at 15.  However, though Defendant Yellowhawk does not offer "REVERLER(S)" branded wine, the danger of confusion is heightened when goods are related or complimentary.  *E. & J. Gallo*, 967 F.2d at 1291.  Similarly, the convergence of marketing channels is an indicator of confusion.  *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  Here, Defendant Yellowhawk uses "Reveler(s)" branded items at its winery within half a mile of Plaintiff's winery, and also advertises "Revel" related items on their website with a

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 13

"Revel" discount code.  ECF No. 190 at 80, ¶ 174.  The fact that Defendant

Yellowhawk is in competition with Plaintiff to sell wine both at the physical

location in Walla Walla and online adds support to a finding of confusion.

*Brookfield Commc'ns, Inc*., 174 F.3d at 1056.  Further, "[f]or related goods, the

danger presented is that the public will mistakenly assume there is an association

between the producers of the related goods, though no such association exists."

*Sleekcraft*, 599 F.2d at 350.  Plaintiff contends that Defendant Yellowhawk orally

alerts customers to the "Revelers Club" loyalty program when they visit the winery

and uses "Reveler(s)" branded packaging materials both for winery and retail

customers.  ECF No. 190 at 81, 82, ¶¶ 179, 180–81.  Taking all these facts in the

light most favorable to Plaintiff, summary judgment is not appropriate because

reasonable minds may find that Defendant Yellowhawk's use of the word

"Reveler(s)" in connection to sale of wine causes confusion with Plaintiff's

"Revelry Winery" and "the Reveler" wine.

> *C.  Degree of Customer Care and Evidence of Actual Confusion*

Related to the idea that the two wineries are in direct competition for

customers, confusion may be found where consumers mistakenly happen upon a

competitor's fares, and even upon discovering the mistake, utilize the infringing

product instead.  *Brookfield Commc'ns, Inc*., 174 F.3d at 1057 ("A consumer who

was originally looking for Brookfield's products or services may be perfectly

content with West Coast's database (especially as it is offered free of charge); but

he reached West Coast's site because of its use of Brookfield's mark as its second-

level domain name, which is a misappropriation of Brookfield's goodwill by West

Coast."). Plaintiff offers that even customers who exercise a reasonable amount of

care may nevertheless find themselves at Defendant Yellowhawk's winery when

they intended to patronize Plaintiff's winery, based on the use of "Reveler(s)," and

if such customers discovered the confusion may nevertheless purchase wine from

Defendant Yellowhawk instead. ECF No. 184 at 13. Defendant offers, without

citation, that "no customer has gone to Yellowhawk seeking [Plaintiff's] wines or

because of a perceived affiliation between Yellowhawk and Plaintiff." ECF No.

171 at 13. It followed with "there has been just one instance ever which a Revelers

Club member sought to redeem rewards at [Plaintiff]." *Id*. at 14. Plaintiff has

provided evidence that customers have been confused between the two marks.

ECF No. 187 at 8, ¶¶ 30–33. Because resolving the issue of actual consumer

confusion given the degree of care exercised by winery customers involves

weighing the competing contentions, the Court leaves the question for a jury.

*Interstellar Starship Servs., Ltd. v. Epix Inc*., 184 F.3d 1107, 1111 (9th Cir. 1999)

("The question of actual confusion presents precisely the kind of conflicting

evidence that should be resolved by a jury, rather than by the district court on

summary judgment.")

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 15

### D. Defendant's Intent

Plaintiff argues that Defendant was intentionally infringing when it utilized "REVELER(S)" because it knew Plaintiff objected to the use short in time after it was acquired by Defendant Mackay, and then was alerted to Plaintiff's objection after opening.  ECF No. 184 at 15.  "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354.  As with the Court's denial of Plaintiff's Motion for Preliminary Injunction, it again declines to determine whether Defendant Yellowhawk was intentional with its use of Plaintiff's trademark, leaving it to be decided by a jury.

### E. Likelihood of Expansion

Finally, Plaintiff posits that Defendant Yellowhawk will continue expanding its use of "REVELER(S)" close in proximity to Plaintiff, which will cause further confusion.  ECF No. 184 at 13.  This is shown, Plaintiff argues, through Mr. Mackay's statement during a deposition that "Revelers Club" would become the marketing "muscle" for the associated restaurant groups, which would naturally indicate that Defendant Yellowhawk would ramp up use accordingly.  ECF No. 187 at 5, ¶ 21.  The Court finds this argument wholly speculative with respect to Defendant Yellowhawk but nevertheless denies summary judgment given the remaining *Sleekcraft* factors.

In sum, the Court declines to grant summary judgment in favor of Defendant Yellowhawk based on a lack of confusion.  The exercise to determine whether or not confusion exists regarding the two entities use of "revel" derivatives is highly fact intensive, and the Court may not resolve debatable factual questions on summary judgment.

## IV.  Defense of Laches

Both Defendants invoke the equitable defense of laches as grounds for granting summary judgment as to Plaintiff's trademark infringement and the Washington Consumer Protection Act, RCW 19.86, claims.  ECF Nos. 171 at 18–19 and 173 at 11; *see Cascade Yarns, Inc. v. Knitting Fever, Inc.,* 905 F. Supp. 2d 1235, 1251 (W.D. Wash. 2012).  Laches acts as a bar for claims that have not been asserted in a timely manner.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Piper Aircraft Corp. v. Wag-Aero, Inc*., 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J., concurring) ("[O]ne who seeks the help of a court of equity must not sleep on his rights.").  The defense of laches can defeat an otherwise valid claim under the Lanham Act.  *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).  The Ninth Circuit has permitted a party to assert the defense of laches in trademark infringement cases "where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time."

*GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1209 (9th Cir. 2000) (citing

*Brookfield Communications, Inc*., 174 F.3d at 1061).  The party asserting laches

has the burden of showing (1) that plaintiff has unreasonably delayed in bringing

suit and (2) that the asserting party now faces extreme prejudice as a result of the

delay.  *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 955 (9th Cir. 2001).  Courts must

also consider factors such as: the strength of trademark, the diligence with which

plaintiff enforced the mark, harm to the senior user if relief is denied, whether the

junior user acted in good faith ignorance of the senior user's rights, and the degree

of competition between the senior and junior users.  *E–Systems, Inc. v. Monitek,*

*Inc*., 720 F.2d 604, 607 (9th Cir. 1983) (internal citation omitted).  In resolving a

motion for summary judgment on the basis of laches, a district court must still

respect Rule 56(c) and construe all factual disputes in the light most favorable to

the non-moving party.  *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc*., 880 F.3d

1109, 1117 (9th Cir. 2018).

Laches is presumed non-applicable for suits brought within the relevant

statute of limitations period, and conversely is presumed applicable if a claim is

brought outside the relevant statutory period.  *Jarrow Formulas, Inc*., 304 F.3d at

838.  Because the Lanham Act does not include a statute of limitation, courts must

look to analogous state law causes of action.  *Au-Tomotive Gold Inc. v.*

*Volkswagen of Am., Inc*., 603 F.3d 1133, 1140 (9th Cir. 2010).  Here, it seems the

most analogous cause of action in state law is Washington's common law tort of trade name infringement, RCW 4.16.080, which contains a three-year statute of limitation. *See Nw. Univ. v. King Cnty.*, No. 220CV01043JLRJRC, 2021 WL 326975, at *6 (W.D. Wash. Jan. 14, 2021); *Oldcaste Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. CIV. C10-322 MJP, 2011 WL 813759, at *4 (W.D. Wash. Mar. 2, 2011).  The tolling for this relevant period begins when the party bringing suit knew or reasonably should have known of the infringement on their rights. *Jarrow Formulas, Inc.*, 304 F.3d at 838.

### A.  Unreasonable Delay

Defendants assert that Plaintiff has either known or had reason to know that "revel" derivatives have been used in the Mackay Restaurant Management Group system beyond the three statutory years, and therefore have unreasonably delayed in defending their mark.  ECF Nos. 171 at 18 and 173 at 11–12.  In support of this contention, Defendants posit that even if Plaintiff did not have actual knowledge of the "Revelers Club," it should have been on constructive notice of the use.  ECF Nos. 171 at 19 and 173 at 12–14.  Plaintiff argues that it had no actual or constructive knowledge of the existence of the Revelers Club until 2018 because as a Walla Walla winery, it dealt with Defendant Mackay as a restaurant group through a third-party wine distributor.  ECF Nos. 184 at 17 and 188 at 10–11.  Once Plaintiff discovered that "Reveler" was being used to target the wine

industry, both through actual bottle labels and at the nearby Defendant

Yellowhawk winery, it brought suit.  *Id*.

There is a genuine factual dispute as to when Plaintiff could have known

about an infringing use of "revel" by Defendants, and therefore the Court declines

to extend laches to grant summary judgment.  The Court must construe all facts in

the light most favorable to Plaintiff, and thus accepts as true that Mr. Burns' first

exposure to Defendants' "Revelers Club," was in the fall of 2018, and he initially

thought it was an isolated rewards club for the Walla Walla based restaurant.  For

the purposes of actual knowledge, Plaintiff's suit filed in July of 2021 against

Defendant Mackay is timely under the three-year statute of limitations.  As a

factual matter, laches is presumed inapplicable to Defendant Yellowhawk because

it did not exist until December 2020, and as a result, actual or constructive

knowledge of its alleged infringing use could not have been ascertained by

Plaintiff before that time.  Stated differently, Plaintiff filed this suit squarely within

the three-year statute of limitation against Defendant Yellowhawk, and thus it

cannot invoke laches.

As to constructive knowledge, Defendant Mackay argues that Plaintiff could

have discovered the use of "revel," as early as 2012 when Mackay Restaurant

Management Group used the term in marketing materials for various promotional

events.  ECF No. 122-1 at 7–17.  Laches may bar suit where a plaintiff "ought to

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 20

have discovered defendant's use sooner had it been diligently seeking to enforce its mark." *E–Systems*, 720 F.2d at 607. Constructive knowledge may be imputed onto a plaintiff in a number of ways, including when the alleged infringement is posted to a website. *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 779 F. App'x 471, 473 (9th Cir. 2019). "Mere passage of time cannot constitute laches, but if the passage of time can be shown to have lulled defendant into a false sense of security, and the defendant acts in reliance thereon, laches may, in the discretion of the trial court, be found." *Whitman v. Walt Disney Prods., Inc*., 263 F.2d 229, 231 (9th Cir. 1958).

However, progressive encroachment can act as an "offensive countermeasure" to the affirmative defense of laches, allowing a plaintiff to demonstrate its timing in bringing suit was justified. *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 311 F. Supp. 2d 1023, 1033 (D. Or. 2004), *aff'd*, 465 F.3d 1102 (9th Cir. 2006) (citing *Kellogg Co. v. Exxon Corp*., 209 F.3d 562, 571 (6th Cir. 2000). Delay is permitted if a plaintiff can show that an infringer's use is "de minimis" at first but grew to encroach on the plaintiff's market. *Grupo Gigante SA De CV v. Dallo & Co*., 391 F.3d 1088, 1103 (9th Cir. 2004) (internal citation omitted). For progressive encroachment to apply, something about the defendant's use of the mark had to have changed significantly. *Tillamook Country Smoker, Inc.,* 311 F. Supp. 2d. at 1034 (quoting *Nartron Corp.*

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 21

1    *v. STMicroelectronics, Inc.*, 305 F.3d 397, 410 (6th Cir. 2002).  While a trademark

2    holder risks losing distinctiveness if it does not act to police its mark, an owner "is

3    not required to act immediately against every possibly infringing use to avoid a

4    holding of abandonment."  *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*,

5    680 F.2d 755, 766 (C.C.P.A. 1982) (internal citation omitted).

6          Defendants offer a series of webpages as proof that Plaintiff had constructive

7    knowledge of the use of "revel" in relation to Defendants' business.  For the

8    purposes of summary judgment, the Court takes judicial notice of these webpages

9    obtained from the Archives.org "Wayback Machine," as an indicator of when the

10   respective pages were available on the internet and for the context of their content,

11   but does not accept the contents as true.  *EVO Brands, LLC v. Al Khalifa Grp.*

12   *LLC*, 657 F. Supp. 3d 1312, 1322 (C.D. Cal. 2023) (determining that Archive.org

13   possesses sufficient indicia of accuracy that it can be used to determine the various

14   historical versions of a website).  The copies of the various pages may be challenge

15   for authenticity at trial.

16         The provided 2012 webpage details the registration process to receive a

17   "Revelers Club" membership and includes information about the club including

18   that food or beverage purchased at the qualifying establishments would result in

19   loyalty points.  ECF No. 122-1 at 22.  The webpages from the intervening years

20   similarly describe the benefits of joining the loyalty program.  *Id*. at 25–47.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 22

Defendant's copy of a January 29, 2018, webpage contains details about the different tiers of the loyalty club, the lowest being the "Reveler" tier and "Gridiron" being the highest.  *Id*. at 39.  The "Gridiron" level of the "Revelers Club" includes "Personalized Wine and Steak Buying Service" as a benefit of the tier.  *Id.*  Defendants contend that these webpages, couple with a 2014 press release mentioning the "Revelers Club," and the fact that Plaintiff continued to solicit Defendant Mackay Restaurant Management Group for sales before and after actually learning about the use in 2018, create constructive knowledge.  ECF No. 173 at 13–14.

However, the Court declines to apply laches at the summary judgment phase because whether Plaintiff was reasonable in bringing this lawsuit in 2021 is a highly factual inquiry that will be left to a jury.  On the one hand, Defendant Mackay submits the aforementioned webpages as evidence it has been using "revel" in connection to the restaurant group beginning as early as 2012, but on the other, questions of fact remain regarding when that use began infringing on Plaintiff's trademark as specifically geared toward wine.  Progressive encroachment may be invoked when a junior user moves into direct competition with the senior user, using the mark to sell the same "product" through the same channels and causing actual market confusion.  *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of California*, 694 F.2d 1150, 1154 (9th Cir. 1982).  Taking

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 23

all facts in the light most favorable to Plaintiff, a reasonable person may find that Defendants' use of the mark changed in scope as the restaurant group expanded to Walla Walla and acquired a winery, directing "Revelers" marketing on the same insolated geographic area acutely focused on wine. *See E-System*, 720 F.2d at 607 (finding where encroachment has been minimal, or its growth slow and steady, laches is inapplicable).

Accepting as true that the earliest actual knowledge Plaintiff had of the infringement was 2018, reasonable minds could differ as to whether Plaintiff was justified in bringing its claim after learning of Defendant's infringement on the wine industry. ECF No. 188 at 13. However, it is similarly plausible that a jury may find that Defendant was infringing on the mark long before the Walla Walla expansion, and Plaintiff was on constructive notice given its business relationship with Defendant Mackay. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc*., 559 F.3d 985, 990 (9th Cir. 2009) (finding a presumption of laches because "a prudent business person" would have discovered a product with a remarkably similar name was offered in the same geographic area within the relevant four-year statutory period). Because reasonable minds could differ as to when exactly Plaintiff should have commenced suit, and the Court must construe all factual disputes in the light most favorable to Plaintiff, the question of when Plaintiff should have known of the use is left to a trier of fact.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 24

While a question of material fact exists as to whether there was delay in bringing suit at all, to extent delay exists, the six *E–Systems* also weigh in favor of allowing a jury to decide this matter.  The factors, which aid in the determination of laches, include:

1. Strength and value of trademark rights asserted;

2. Plaintiff's diligence in enforcing its mark;

3. Harm to senior user if relief is denied;

4. Good faith ignorance by the junior user;

5. Competition between senior and junior users; and

6. Extent of harm suffered by junior user because of senior user's delay.

*E–Systems*, 720 F.2d at 605.

The Court resolved above the first factor, strength of Plaintiff's mark, and will not rehash it here.

As to factor two, plaintiff's diligence in enforcement, Defendants both argue that Plaintiff has not been diligent in enforcing its rights generally, as "revel" derivatives are used both by Defendant Mackay's establishments and other entities in connection to wine, wine-related products, and other alcoholic beverages.  ECF Nos. 171 at 16 and 173 at 18.  Plaintiff counters that it did diligently enforce its mark against Defendants when it discovered their infringing use and more broadly focuses enforcement resources on entities that share the winery's geographic area

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 25

and pose a threat of further infringement.  ECF Nos. 185 at 8, ¶ 25 and 188 at 16.

As was discussed above, whether Plaintiff's actions could be described as

"diligent" with respect to defending its mark should be left to a jury.

Under factor three, harm to senior user, Plaintiff argues it will be damaged in

the form of lost sales and further tarnishing of reputation if Defendant Mackay is

permitted to continue utilizing the "Revelers Club."  ECF No. 188 at 16.

Defendant, predictably, argues that Plaintiff would experience no change, as the

group has utilized the phrase since 2012.  ECF No. 173 at 19.  This kind of harm

should be proved or disproved at trial.

As to the fourth factor, whether Defendant's use of the "Reveler's Club" was

a willful infringement is, again, a factual question.  Whether or not Defendant's

intentionally encroached on Plaintiff's business by employing the "Revelers Club,"

would require the Court to weigh the credibility of the parties.  ECF No. 173 at 20

and 188 at 17.

As discussed above, the fifth factor appears to affirmatively weigh against

summary judgment as it seems likely that Plaintiff and Defendant are in

competition with each other.  Taking the facts in the light most favorable to

Plaintiff, Defendant Mackay's ownership of three establishments in Walla Walla,

including Defendant Yellowhawk half a mile away, it seems likely that *some*

competition for customers takes place between the two entities.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 26

1  Finally, the sixth factor, extent of harm suffered by a junior user based on a

2  senior user's delay, is perhaps the most appropriate of the factors to be resolved

3  outside of a summary judgment finding.  Prejudice to defendant is a required

4  element of the application of laches.  *Whitman*, 263 F.2d at 231.  "However, a

5  defendant can make the required showing of prejudice by proving that it has

6  continued to build a valuable business around its trademark during the time that the

7  plaintiff delayed the exercise of its legal rights."  *Grupo Gigante SA De CV*, 391

8  F.3d at 1105.  Defendant Mackay argues it has spent over a decade cultivating the

9  "Revelers Club," as a brand, and requiring it to cease use and pay damages would

10 cause financial loss and reputational damage.  ECF No. 173 at 22–23.  Plaintiff

11 argues that Defendant Mackay has not provided proof of the financial investment it

12 has made in the "Revelers," brand, and fails to demonstrate its centrality to the

13 business of acquiring new restaurants and maintaining customers at its current fleet

14 of establishments.  ECF No. 188 at 18–19.  Without a firm establishment of

15 unreasonable delay, this factor, as well as prejudice as it relates to the overarching

16 laches analysis, is not appropriate to be resolved via summary judgment.  *Danjaq*

17 *LLC*, 263 F.3d at 955 (a party moving for laches must establish (1) unreasonable

18 delay (2) it faces extreme prejudice as a result).

19 In sum, the Court determines that a jury should determine whether a delay in

20 bringing suit, if such delay exists, was reasonable.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 27

**V.       Defense of Unclean Hands, Acquiescence, and Equitable Estoppel**

Defendant Yellowhawk next asserts that the equitable defense of unclean hands, whereby relief is barred when a plaintiff has violated conscience, good faith or other equitable principles by prior conduct, is applicable to Plaintiff because it provided false assurances. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (internal citation omitted).  To demonstrate a plaintiff is engaging in inequitable conduct for the purposes of unclean hands, a defendant must show that the plaintiff's conduct is inequitable in relation to the subject matter of the claims. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *see also Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 351 (9th Cir. 1963) (internal citations omitted) ("Where unclean hands has been asserted to bar a claim of infringement it has usually been because the patent was fraudulently obtained . . . or there had been a concealment of evidence amounting to a fraud on the court. . .").  "[E]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) (internal citation and quotation omitted). The principle of unclean hands rests upon the idea that "it is essential that the plaintiff should not in his trade-mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Worden v. Cal. Fig*

*Syrup Co.*, 187 U.S. 516, 528 (1903).

Even if prior statements between Mr. Burns and Mr. Mackay related to Defendant Mackay's use of the "Revelers" could be considered misleading (and the Court declines to determine whether it is or is not), Plaintiff's communication with Defendant Yellowhawk was consistently and unequivocally protective. *See* ECF Nos. 100-7 at 3[3] and 172-1 at 14.[4] Unclean hands is inapplicable in this

---

[3] Contained in an email congratulating Mr. Mackay on the acquisition of the precursor to Yellowhawk Resort, Mr. Burns wrote, "The Revelers Club used in a winery setting, or directly in connection with, or affiliation to, wine/spirits/beer would be an infringement on our trademark. I wanted to be very proactive in bringing this to your attention. I would ask that you either not use the Revelers Club in conjunction with the winery property, or that you perhaps consider a rebranding of that loyalty club."

[4] Defendant Yellowhawk relies on the deposition of Mr. Dan Thielssen, Yellowhawk's managing partner, regarding a phone call he had with Mr. Burns in 2019, in which Mr. Burns stated that he knew about the Revelers Club and was only concerned about it in relation to labels on wine bottles. However, at that time Mr. Thiessen was working in a different capacity under the Defendant Mackay umbrella as Yellowhawk resort was not acquired until December 2020. Thus, this

1    setting.

2    Defendant Yellowhawk's asserted defenses of acquisition and equitable

3    estoppel fail for the same reason.  Acquiesces exists were a plaintiff conveyed

4    implied consent.  *Eat Right Foods*, 880 F.3d at 1121.  To establish acquiescence, a

5    defendant must show that "(1) the senior user actively represented that it would not

6    assert a right or a claim; (2) the delay between the active representation and

7    assertion of the right or claim was not excusable; and (3) the delay caused the

8    defendant undue prejudice."  *Seller Agency Council, Inc,* 621 F.3d at 989.  The

9    equitable defense of estoppel is applicable when a party's conduct regarding a

10   protected mark leads another to believe that a right will not be enforced, thereby

11   inducing that party to act to their detriment in reliance on that belief.  *Saverslak v.*

12   *Davis-Cleaver Produce Co*., 606 F.2d 208, 213 (7th Cir. 1979); s*ee also Stafford v.*

13   *Rite Aid Corp*., 998 F.3d 862, 865 (9th Cir. 2021) (internal citation omitted)

14   ("Equitable estoppel generically precludes a party from asserting rights he

15   otherwise would have had against another when his own conduct renders assertion

16   of those rights contrary to equity.").

17   Plaintiff affirmatively objected to Defendant Yellowhawk's use of

18   _____

19   conversation predates its use of "Revelers," in connection to the operation of a

20   winery.

"Revelers," in connection to their business in their related industries in January of

2021, after Defendant Yellowhawk was established in December 2020.  ECF No.

100-7.  Thus, Defendant Yellowhawk's argument fails at step one of the

acquisition test, and is untenable under equitable estoppel as Plaintiff asserted its

rights very early in Yellowhawk's existence.  *See Bizar v. Dee*, 618 F. App'x 913,

916 (9th Cir. 2015) (holding equitable estoppel not applicable to a claim brought

promptly after learning of the infringement).  Moreover, Defendant's assertion that

Mr. Burn's prior knowledge of the expansion of "Revelers Club" entities in the

Walla Walla amounts to acquisition or equitable estoppel would improperly draw

an inference in favor of the moving party, as there is no suggestion that Plaintiff

would have reason to know that Defendant Mackay would acquire a winery as part

of the group.  A grant of summary judgment on Defendant Yellowhawk's asserted

equitable defenses is improper.

## VI.    Consumer Protection Claim

Next, Defendant Yellowhawk argues that Plaintiff's Consumer Protection

Act claim must be dismissed because Defendants' use in not likely to cause

confusion and because it has failed to show it has been damaged by the use.  ECF

No. 171 at 26.  The Washington Consumer Protection Act makes engaging in

unfair methods of competition or deceptive acts or practices in commerce illegal.

RCW 19.86.020.  A successful CPA claim may enjoin future action and result in

an award of actual damages, attorney's fees, and the discretionary award of treble damages. RCW 19.86.090; *see also Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 54 (1987). To establish an unfair method of competition, a private party must establish (1) the action complained of is an unfair or deceptive act or practice (2) the action occurred in the conduct of trade or commerce (3) a sufficient showing of public interest (4) an injury in the plaintiff's business or property and (5) a causal link between the unfair acts and injury suffered. *Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 739 (1987) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986)).

Confusion based on an entities business in the relevant field of commerce can satisfy factor three of the test, the public interest prong. *Nordstrom, Inc.*, 107 Wash. 2d at 743. Having already discussed the remaining question of likelihood of confusion at length above, the Court will not readdress it here. Defendant Yellowhawk also asserts that Plaintiff has provided no proof of damages resulting from its conduct, and thus cannot satisfy the test. ECF No. 171 at 26. However, even if Plaintiff had not provided a measure of what it views as a monetary injury resulting from Defendant Yellowhawk's use of "Revelers" (ECF No. 161-1), it is simply required to show reputational injury to its business to satisfy the fourth factor. *Nordstrom, Inc.*, 107 Wash. 2d at 740 (finding that the language of RCW 19.86.090 "makes it clear that no monetary damages need be proven, and that

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 32

nonquantifiable injuries, such as loss of goodwill would suffice for this element of

the *Hangman Ridge* test"). As a result, Defendant Yellowhawk is not entitled to

dismissal of Plaintiff's CPA claim.

## VII. Damages

Both Defendants attack Plaintiff's ability for recovery of damages at trial.

Defendant Mackay asserts that Plaintiff should be cabined to damages after

December 10, 2019, for failing to provide trademark notice. ECF No. 173 at 24.

Defendant Yellowhawk argues that Plaintiff's claim for disgorgement of its profits

is inappropriate as not supported by the record. ECF No. 171 at 23–26.

### A. Trademark Notice

Under 15 U.S.C. § 1111, a trademark registrant who fails to provide notice

by displaying the words "Registered in U.S. Patent and Trademark Office," "Reg.

U.S. Pat. & Tm. Off.," or the letter R enclosed within a circle, may not recover

damages for use by others unless the infringer had actual notice of the registration.

Defendant Mackay argues that Plaintiff did not utilize a mechanism of notice in

any materials well after their business relationship was established, and thus it did

not have actual notice of the registration until December 2019. ECF No. 173 at 24.

Plaintiff argues that Defendant Mackay was on notice because it has included a

required notice of its trademark on all goods and services since it obtained the

registrations, including wine bottles. ECF No. 190 at 84, ¶ 194. This disagreement

1    about a material fact is sufficient to deny summary judgment because the Court

2    cannot weigh the credibility of the parties against each other on summary

3    judgment. *Liberty Lobby, Inc*., 477 U.S. at 255.

4        B. *Defendant Yellowhawk's Profits*

5        Defendant Yellowhawk requests that the Court limit its potential damages,

6    as Plaintiff has not demonstrated a causal link between the alleged infringement

7    and Defendant Yellowhawk's actions, and that permitting a remedy of

8    disgorgement of profits would be inequitable. ECF No. 171 at 24–26. However,

9    Defendant Yellowhawk's argument is largely an exercise of points to be proven or

10   disproven at trial. As to the argument that disgorgement of all profits is

11   inequitable, Defendant Yellowhawk offers that "a trademark defendant's mental

12   state is a highly important consideration in determining whether an award of

13   profits is appropriate," and given the lack of evidence that it willfully encroached

14   on Plaintiff's mark, the Court should limit its potential liability. *Romag Fasteners,*

15   *Inc v. Fossil, Inc*., 590 U.S. 212, 219 (2020). However, § 1125(c) of the Lanham

16   Act does not require a specific "willfulness" state of mind in order to recover treble

17   damages. *Id*. at 215. Plaintiff argues Defendant Yellowhawk did in fact use the

18   mark intentionally, because Mr. Burns wrote to Defendant early in its inception to

19   express that it did not consent to its use of the "Revelers Club." ECF No. 184 at

20   20. At any rate, whether Defendant Yellowhawk intentionally, willfully,

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 34

recklessly, negligently, or completely innocently used the trademark, a jury will need to determine what mental state Defendant Yellowhawk had when it employed the "Revelers" brand before the proper remedy can be determined. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1074 (9th Cir. 2015) (upholding the district court's order of disgorgement after a jury found violation of 15 U.S.C. § 1125).

Further, Defendant Yellowhawk contends that Plaintiff has not carried its burden in establishing that it has obtained revenue from the infringement. ECF No. 171 at 26. In general, the "profit disgorgement remedy is measured by the defendant's gain," and a district court "should award actual, proven profits unless the defendant infringer gained more from the infringement than the defendant's profits reflect." *Fifty-Six Hope Rd. Music, Ltd*., 778 F.3d at 1077. Plaintiff's contention that it has been harmed by Defendant Yellowhawk through the diversion of customers and reputational damage is satisfactory for the purposes of summary judgment. *Maier Brewing Co. v. Fleischmann Distilling Corp*., 390 F.2d 117, 122 (9th Cir. 1968) (discussing damages resulting from the confusion between a trademark holder and an infringer that amounts to reputational harm). Further, Plaintiff's damages expert has provided an estimation of its position on damages which the report considered "after infringement was established," and Defendant will have the ability to challenge his findings at trial. ECF No. 161-1 at 3; *see*

*Fifty-Six Hope Rd. Music, Ltd.*, 778 F.3d at 1076 ("The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement.")

Perhaps Plaintiff is not entitled to the disgorgement of Defendant Yellowhawk's profits, but that is a question that can only be answered after a finding of infringement and mental state.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Yellowhawk Resort WW, LLC's Motion for Summary Judgment (ECF No. 171) is **DENIED**.

2. Defendant Mackay Restaurant Management Group, Inc.'s Motion for Summary Judgment (ECF No. 173) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED July 1, 2024.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT ~ 36